| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Kristin A. Zilberstein, Esq. (SBN: 200041)<br>Jennifer R. Bergh, Esq. (SBN 305219)<br>Adam P. Thursby, Esq. (SBN 318465)<br>LAW OFFICES OF MICHELLE GHIDOTTI<br>1920 Old Tustin Ave<br>Santa Ana, CA 92705<br><br>Ph: (949) 427-2010<br>Fax: (949) 427-2732<br>kzilberstein@ghidottilaw.com | |

☐ *Movant appearing without an attorney*
☒ *Attorney for Movant* Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust as Owner Trustee for the Residential Credit Opportunities Trust V, its successor and/or assignees

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION**

| In re:<br><br>Jose Luis B. Guerrero | CASE NO.: 18-14774-MH<br><br>CHAPTER: 7 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** |
| Debtor(s). | DATE: 08/21/2018<br>TIME: 10:00 am<br>COURTROOM: 303 |

| **Movant:** | Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust as Owner Trustee for the Residential Credit Opportunities Trust V, its successor and/or assignees |
|---|---|

1. **Hearing Location**:

   ☐ 255 East Temple Street, Los Angeles, CA 90012      ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367      ☐ 1415 State Street, Santa Barbara, CA 93101
   ☒ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

   a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c. ☐ An application for order setting hearing on shortened notice was filed and remains pending.  After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: 07/18/2018

The Law Offices of Michelle Ghidotti
_____
Printed name of law firm (if applicable)

Kristin Zilberstein, Esq.
_____
Printed name of individual Movant or attorney for Movant


/s/ Kristin Zilberstein
_____
Signature of individual Movant or attorney for Movant

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                   Page 2                          **F 4001-1.RFS.RP.MOTION**

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

   ☒ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   ☐ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

   ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   ☐ Other (specify):

2. **The Property at Issue (Property):**

   a. Address:

   *Street address:* 6927 Cypress Grove Drive
   *Unit/suite number:*
   *City, state, zip code:* Riverside CA 92506

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit _1_____):

3. **Bankruptcy Case History:**

   a. A ☒ voluntary ☐ involuntary  bankruptcy petition under chapter  ☒ 7 ☐ 11 ☐ 12 ☐ 13 was filed on (date) _06/05/2018_.

   b. ☐ An order to convert this case to chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13 was entered on (date) _____.

   c. ☐ A plan, if any, was confirmed on (date) _____.

4. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

   (1) ☒ Movant's interest in the Property is not adequately protected.

       (A) ☒ Movant's interest in the Property is not protected by an adequate equity cushion.

       (B) ☒ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

       (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

   (2) ☐ The bankruptcy case was filed in bad faith.

       (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

       (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

       (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

       (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

       (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition.  Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

       (F) ☐ Other (see attached continuation page).

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

(3) ☐ *(Chapter 12 or 13 cases only)*

    (A) ☐ All payments on account of the Property are being made through the plan.
☐ Preconfirmation ☐ Postconfirmation  plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on *(date)* _____,
which is ☐ prepetition ☐ postpetition.

(6) ☐ For other cause for relief from stay, see attached continuation page.

b. ☐ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

    a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

    b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

    c. ☐ Other *(specify)*:

6. **Evidence in Support of Motion:  (Declaration(s) MUST be signed under penalty of perjury and attached to this motion)**

    a. The REAL PROPERTY DECLARATION on page 6 of this motion.

    b. ☐ Supplemental declaration(s).

    c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents.  Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit _____.

    d. ☒ Other:
Deed of Trust for the property attached as Exhibit 2, Assignments as exhibit 3
Note as Exhibit 4, Loan Modification agreement as Exhibit 5
Broker's price opinion and supporting declaration as Exhibit 6

7. ☐ **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**Movant requests the following relief:**

1. Relief from the stay is granted under:  ☒ 11 U.S.C. § 362(d)(1)  ☐ 11 U.S.C. § 362(d)(2)  ☐ 11 U.S.C. § 362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☒ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement.  Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4. ☐ Confirmation that there is no stay in effect.

5. ☐ The stay is annulled retroactive to the bankruptcy petition date.  Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6. ☒ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
   ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9. ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4):  If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:

    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☐ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date: ___07/18/2018___

The Law Office of Michelle Ghidotti
_____
Printed name of law firm (*if applicable*)
 Kristin Zilberstein, Esq.
_____
Printed name of individual Movant or attorney for Movant

/s/ Kristin Zilberstein
_____
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# REAL PROPERTY DECLARATION

I, (*print name of Declarant*) Ron McMahan _____, declare:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age.  I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

    a. ☐ I am the Movant.

    b. ☐ I am employed by Movant as (*state title and capacity*):

    c. ☒ Other (*specify*): I am employed as the CEO of AMIP, operators of the Residential Credit Opportunties Trust V

2.  a. ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property.  I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant.  These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the court if required.

    b. ☐ Other (*see attached*):

3.  The Movant is:

    a. ☒ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.  A true and correct copy of the note, with affixed alonges/indorsements, is attached as Exhibit  4    .

    b. ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary.  True and correct copies of the recorded security instrument and assignments are attached as Exhibit  2    .

    c. ☐ Servicing agent authorized to act on behalf of the:
        ☐ Holder.
        ☐ Beneficiary.

    d. ☐ Other (*specify*):

4.  a. The address of the Property is:

        *Street address*: 6927 Cypress Grove Drive
        *Unit/suite no.*:
        *City, state, zip code*:Riverside, CA 92506

    b. The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:
       Document number 2007-0357976 recorded in the official records of the County of Riverside

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

5. Type of property (*check all applicable boxes*):

   a. ☐ Debtor's principal residence     b. ☒ Other residence

   c. ☐ Multi-unit residential     d. ☐ Commercial

   e. ☐ Industrial     f. ☐ Vacant land

   g. ☐ Other (*specify*):

6. Nature of the Debtor's interest in the Property:

   a. ☐ Sole owner

   b. ☒ Co-owner(s) (*specify*): Co-Owner with Jose Luis Bobadilla Jr.

   c. ☐ Lienholder (*specify*):

   d. ☐ Other (*specify*):

   e. ☐ The Debtor ☐ did ☐ did not  list the Property in the Debtor's schedules.

   f. ☒ The Debtor acquired the interest in the Property by ☐ grant deed ☐ quitclaim deed ☒ trust deed.

       The deed was recorded on (*date*) 05/31/2007  .

7. Movant holds a ☒ deed of trust ☐ judgment lien ☐ other (*specify*) _____
   that encumbers the Property.

   a. ☒ A true and correct copy of the document as recorded is attached as Exhibit 2   .

   b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is
   attached as Exhibit 4   .

   c. ☒ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
   trust to Movant is attached as Exhibit 3   .

8. Amount of Movant's claim with respect to the Property:

|   |   | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $ 360,327.97 |
| b. | Accrued interest: | $ | $ | $ 78,886.80 |
| c. | Late charges | $ | $ | $ 954.00 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $ 26,016.60 |
| e. | Advances (property taxes, insurance): | $ | $ | $ |
| f. | Less suspense account or partial balance paid: | $[                ] | $[                ] | $[                ] |
| g. | TOTAL CLAIM as of (*date*):   06/05/2018 | $ | $ | $465,231.37 |

   h. ☐ Loan is all due and payable because it matured on (*date*) _____

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action has occurred*):

   a. Notice of default recorded on (*date*) _____ or ☒ none recorded.

   b. Notice of sale recorded on (*date*) 02/07/2018  or ☐ none recorded.

   c. Foreclosure sale originally scheduled for (*date*) 06/05/2018  or ☐ none scheduled.

   d. Foreclosure sale currently scheduled for (*date*) _____ or ☒ none scheduled.

   e. Foreclosure sale already held on (*date*) _____ or ☐ none held.

   f. Trustee's deed upon sale already recorded on (*date*) _____ or ☐ none recorded.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☒ (*chapter 7 and 11 cases only*) Status of Movant's loan:

    a. Amount of current monthly payment as of the date of this declaration: $ 2,194.86 _____ for the month of July _____ 2018 .

    b. Number of payments that have come due and were not made: 2 ___ . Total amount: $ 4389.72 _____

    c. Future payments due by time of anticipated hearing date (*if applicable*):

        An additional payment of $ 2194.86 _____ will come due on (*date*) 07/01/2018 , and on the 1st ___ day of each month thereafter. If the payment is not received within 15 ___ days of said due date, a late charge of $ 109.74 _____ will be charged to the loan.

    d. The fair market value of the Property is $ 525,000 _____ , established by:

        (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____ .

        (2) ☒ A real estate broker or other expert's declaration regarding value is attached as Exhibit 6 ___ .

        (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____ .

        (4) ☐ Other (*specify*):

    **e. Calculation of equity/equity cushion in Property:**

        Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | | $ | $ 465,231.37 |
| 2nd deed of trust: | | $ | $ |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT:** $ 465,231.37 | | | |

    f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit _____ and consists of:

        (1) ☐ Preliminary title report.

        (2) ☐ Relevant portions of the Debtor's schedules.

        (3) ☐ Other (*specify*):

    g. ☒ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
        I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $ 59,768.63 _____ and is 11.38 ___ % of the fair market value of the Property.

    h. ☒ **11 U.S.C. § 362(d)(2)(A) - Equity:**
        By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $ 59,768.63 _____ .

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

i. ☒ Estimated costs of sale: $ 42,000_____ (estimate based upon _8_____% of estimated gross sales price)

j. ☒ The fair market value of the Property is declining because:
   Payments are not being made

12. ☐ *(Chapter 12 and 13 cases only)* Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for *(or concluded on)* the following date: _____.
   A plan confirmation hearing currently scheduled for (or concluded on) the following date:_____.
   A plan was confirmed on the following date *(if applicable)*: _____.

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:                                       $
   *(For details of type and amount, see Exhibit _____)*

e. Attorneys' fees and costs:                                                                    $
   *(For details of type and amount, see Exhibit _____)*

f. Less suspense account or partial paid balance:                               $[                              ]

   TOTAL POSTPETITION DELINQUENCY:                               $

g. Future payments due by time of anticipated hearing date *(if applicable)*: _____.
   An additional payment of $_____ will come due on _____, and on
   the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late
   charge of $_____ will be charged to the loan.

h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how
   applied (if applicable):
   $_____ received on *(date)* _____
   $_____ received on *(date)* _____
   $_____ received on *(date)* _____

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
   A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or
   13 trustee regarding receipt of payments under the plan *(attach LBR form F 4001-1.DEC.AGENT.TRUSTEE)*.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                      Page 9                                 F 4001-1.RFS.RP.MOTION

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition. ☐ postpetition.

17. ☐ The bankruptcy case was filed in bad faith:

    a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

    b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

    c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

    d. ☐ Other (*specify*):


18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

    b. ☐ Multiple bankruptcy cases affecting the Property include:

        1. Case name: _____
        Chapter: _____ Case number: _____
        Date dismissed: _____ Date discharged: _____ Date filed: _____
        Relief from stay regarding the Property ☐ was ☐ was not granted.

        2. Case name: _____
        Chapter: _____ Case number: _____
        Date dismissed: _____ Date discharged: _____ Date filed: _____
        Relief from stay regarding the Property ☐ was ☐ was not granted.

        3. Case name: _____
        Chapter: _____ Case number: _____
        Date dismissed: _____ Date discharged: _____ Date filed: _____
        Relief from stay regarding the Property ☐ was ☐ was not granted.

    ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

    ☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                           Page 10                                           **F 4001-1.RFS.RP.MOTION**

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 7-10-18 | Ron McMahon | ~~~ |
| --- | --- | --- |
| Date | Printed name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# EXHIBIT "1"

WORLD SAVINGS BANK, FSB

# E X H I B I T "A"

## LEGAL DESCRIPTION

REDACTION

**LOAN NC**

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF **RIVERSIDE** STATE OF
**CALIFORNIA**, DESCRIBED AS FOLLOWS:

Lot(s)  50  of Tract No. 21767-1, in the City of Riverside,  County of Riverside, State of
California, as shown by Map on file in Book 177 Page(s) 65 through 69 inclusive of Maps, in
the office of the County Recorder of said County.

EXCEPT therefrom all oil, gas, minerals, and other hydrocarbon substances lying below a depth of
500 feet, but with no right of surface entry, as provided in deeds of record.

REDACTION

# EXHIBIT "2"

DOC # 2007-0357976
05/31/2007 08:00A Fee:66.00
Page 1 of 20
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

LANDAMERICA SOUTHLAND TITLE

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

WHEN RECORDED MAIL TO:
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER REDACTION

NOTE AMOUNT: $370,000.00

#REDACTION

#REDACTION

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|-----|------|------|------|------|
| 1 | | | 20 | | 1 | | | | |
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM 014 |

66

T 014

# DEED OF TRUST

**THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY PAYMENT AMOUNT AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED.**

**THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $462,500.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.**

## I.    DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST
   **(A) Security Instrument.** This Deed of Trust, which is dated **May 17, 2007,** will be called the "Security Instrument."

   **(B) Borrower.** JOSE LUIS BOBADILLA, A MARRIED MAN AND JOSE LUIS BOBADILLA JR, AN UNMARRIED MAN  sometimes will be called "Borrower" and sometimes simply "I" or "me." JLB

Lewis

JUN 12 2007

   **(C) Lender.** WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender." Lender is **a FEDERAL SAVINGS BANK,** which is organized and exists under the laws of the United States. Lender's address is **1901 Harrison Street, Oakland, CA 94612** .

SD001A (2004-03-3)
DEFERRED INTEREST

CA

Page 1

REDACTION

**LENDER'S USE ONLY**

REDACTION

**(D) Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. **$370,000.00**, plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by **June 1, 2037** ("Maturity Date").

**(E) Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

**(F) Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

**(G) Person.** Any person, organization, governmental authority or other party will be called "Person."

**(H) Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation** is the "Trustee."

## II.    BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)     pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)    pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)   keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

## III.    DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below:

(i)   The Property which is located at **6927 CYPRESS GROVE DR, RIVERSIDE, CA  92506-6216**. The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)   All buildings and other improvements that are located on the Described Property;

REDACTION

(iii)    All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)    All rents or royalties and other income from the Described Property;

(v)    All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)    All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)    All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)    All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)    All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)    All of the amounts that I pay to Lender under Paragraph 2 below.

## IV.    BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

### COVENANTS

I promise and I agree with Lender as follows:

## 1.    BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

## 2.    PAYMENTS FOR TAXES AND INSURANCE

### (A)    Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

SD001C (2004-03-3)                                                                                          CA

REDACTION

**(B)**     **Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

SD001D (2004-03-3)

CA

REDACTION

### 3. APPLICATION OF BORROWER'S PAYMENTS

Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

### 4. BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a **lien.** I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

### 5. BORROWER'S OBLIGATION TO MAINTAIN INSURANCE

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

SD001E (2004-03-3)                                                                                                                    CA

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company. I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

## 6.  BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

SD001F (2004-03-3)

CA

REDACTION

## 7.    LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

## 8.    LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

## 9.    AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

SD001G (2004-03-3)                                                                                        CA

REDACTION

## 10. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS

### (A) Borrower's Obligations

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

### (B) Lender's Rights

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured.

## 11. OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS

Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

## 12. MAXIMUM LOAN CHARGES

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

REDACTION

### 13.   LEGISLATION AFFECTING LENDER'S RIGHTS

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

### 14.   NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at **6927 CYPRESS GROVE DR, RIVERSIDE, CA 92506-6216**. A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

### 15.   GOVERNING LAW; SEVERABILITY

**This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located.** In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

### 16.   BORROWER'S COPY

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

### 17.   LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by

REDACTION

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

### 18.    INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

### 19.    CLERICAL ERRORS

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

### 20.    LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

### 21.    WAIVER OF STATUTE OF LIMITATIONS

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

### 22.    CAPTIONS

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

### 23.    MODIFICATION

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

### 24.    CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

**(A)**    If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

**(B)** The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

**(C)** If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master** or **blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such **master** or **blanket** policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such **master** or **blanket** policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

**(D)** I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the **master** or **blanket** hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

## 25.    FUTURE ADVANCES

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

REDACTION

26. **AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

**THIS SPACE INTENTIONALLY LEFT BLANK.**

27. **SUBSTITUTION OF TRUSTEE**

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

SD001L (2004-03-3)    [L01 (2006-08-1)]

CA

REDACTION

## 28.    RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

## 29.    RECONVEYANCE

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

## 30.    STATEMENT OF OBLIGATION

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

REDACTION

**31.    ( X )   QUICK QUALIFYING LOAN PROGRAM**

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate.

**32.    ( X )   OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate.

**( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

REDACTION

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

### (PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

### BORROWER(S):

_____    (Seal)

JOSE LUIS BOBADILLA

_____    (Seal)

JOSE LUIS BOBADILLA JR
      Lewis  JLB

### ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of ORANGE

On 05/18/2007 before me, M. ZAMORANO, NOTARY PUBLIC
_Date_ _Name and Title of Officer (e.g., "Jane Doe, Notary Public")_

personally appeared JOSE LUIS BOBADILLA AND JOSE LEWIS
_Name(s) of Signer(s)_

BOBADILLA JR.

☐ personally known to me

☒ (or proved to me on the basis of satisfactory evidence)

**M ZAMORANO**
**COMMISSION 1447491**
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY COUNTY
My Comm. Expires Oct. 28, 2007

to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Place Notary Seal Above_

Signature _M Zamorano_
_Signature of Notary Public_

──────────── **OPTIONAL** ────────────

_Though the information below is not required by law, it may prove valuable to persons relying on the document_
_and could prevent fraudulent removal and reattachment of this form to another document._

**Description of Attached Document**
Title or Type of Document: Deed of Trust

Document Date: MAY 18, 2007          Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _Jose Luis Bobadilla_
☒ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

_Jose Luis Bobadilla_
Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer's Name: _____
☒ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

© 2006 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA  91313-2402      Item No. 5907 v609      Reorder: Call Toll-Free 1-800-876-6827

REDACTION

**BORROWER(S)' SPOUSE(S) OR DOMESTIC PARTNER(S):** The undersigned hereby joins in this Security Instrument for the sole purpose of encumbering, subordinating, conveying and/or waiving any current or potential interest in the Property. By signing below, the undersigned encumbers, subordinates, conveys and/or waives any and all rights, interests or claims in the Property, including, but not limited to, homestead, dower, marital or joint-occupancy rights. No personal liability under the Note is hereby incurred by the undersigned joining spouse or domestic partner.

### (PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

### BORROWER(S)' SPOUSE(S) OR DOMESTIC PARTNER(S):

_Consuelo Bobadello_ (Seal)

_____ (Seal)

_____ (Seal)

### ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

SD001 (2004-03-1)

Page 16

CA

[AL1 (2004-03-1)]

OFFICIAL CALIFORNIA NOTARIAL CERTIFICATE

**ACKNOWLEDGMENT**

State of California

County of _Orange County_    Title of Document _~~None~~ Deed of Trust_

On _May 25, 2007_ , before me, _Jacklyn J. Johnson, Notary Public_
personally appeared _Consuelo Bobadilla_ [ ] ~~personally known to~~

me - OR - [✓] proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are

subscribed to the within instrument and acknowledged to me that he/she/they executed the same in

his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),

or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and seal.

JACKLYN J. JOHNSON
Comm. # 1521911
NOTARY PUBLIC - CALIFORNIA
Los Angeles County
My Comm. Expires Oct. 24, 2008

SIGNATURE OF NOTARY

Copyright © 1994, All Rights Reserved, The California School of Notary Public

# EXHIBIT "3"

DOC # 2016-0545998
12/08/2016 09:56 AM Fees: $25.00
Page 1 of 1
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: KIYOMI #289

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

ASSIGNMENT TEAM
WELLS FARGO BANK, N.A.
1000 BLUE GENTIAN RD #200
MAC: N9289-018
EAGAN, MN 55121-4400

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Riverside, California
"BOBADILLA"

PREPARED BY: WELLS FARGO BANK, N.A.

For Value Received, WELLS FARGO BANK, N.A. S/B/M WACHOVIA MORTGAGE, FSB F/K/A WORLD SAVINGS BANK, FSB hereby grants, assigns and transfers to PROF-2013-S3 LEGAL TITLE TRUST IV, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE at 60 LIVINGSTON AVENUE, EP-MN-WS3D, ST. PAUL, MN 55107 all its interest under that certain Deed of Trust dated 05/17/2007, in the amount of $370,000.00, executed by JOSE LUIS BOBADILLA, A MARRIED MAN AND JOSE LEWIS BOBADILLA JR, AN UNMARRIED MAN to WORLD SAVINGS BANK, FSB and Recorded: 05/31/2007 as Instrument No.: 2007-0357976 in the County of Riverside, State of California.

In witness whereof this instrument is executed.

WELLS FARGO BANK, N.A. S/B/M WACHOVIA MORTGAGE, FSB F/K/A WORLD SAVINGS BANK, FSB
On _11/29/16_

_Juliane M Christensen_
Vice President Loan Documentation

STATE OF **Minnesota**
COUNTY OF **Dakota**

On _11/29/2016_, before me, _Jennifer Rae Anderson_, a Notary Public in the State of **Minnesota**, personally appeared _Juliane M Christensen_, Vice President Loan Documentation, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_Jennifer Rae Anderson_
Notary Expires: 1/31/2020

JENNIFER RAE ANDERSON
Notary Public-Minnesota
My Commission Expires Jan 31, 2020

REDACTION

(This area for notarial seal)

# EXHIBIT "4"

WORLD SAVINGS BANK, FSB

# FIXED RATE MORTGAGE NOTE

## PICK-A-PAYMENT<sup>sm</sup> LOAN

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY MONTHLY PAYMENT AND MY UNPAID PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES AND MY PRINCIPAL BALANCE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT OF THE SAME DATE.

LOAN NUMBE   REDACTION                          DATE: **May 17, 2007**

BORROWER(S): **JOSE LUIS BOBADILLA, A MARRIED MAN AND JOSE LUIS BOBADILLA JR, AN UNMARRIED MAN**   sometimes called "Borrower" and sometimes simply called "I" or "me."

PROPERTY ADDRESS: **6927 CYPRESS GROVE DR, RIVERSIDE, CA  92506-6216**

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S.  **$370,000.00** , called "Principal," plus interest, and any other charges incurred during the course of the loan, to the order of the Lender. The Lender is **WORLD SAVINGS BANK, FSB, a FEDERAL SAVINGS BANK, ITS SUCCESSORS AND/OR ASSIGNEES,** or anyone to whom this Note is transferred.

### 2.  INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid.  I will pay interest at the yearly rate of **7.850%**. Interest will be charged on the basis of a twelve month year and a thirty day month.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

REDACTION

LENDER'S USE ONLY

SD253A (2006-09-3)   [A01 (2006-09-3)]        FIXED PICK-A-PAYMENT NOTE        CA
Page 1

REDACTION

3. **PAYMENTS**

(A)   **Time and Place of Payments**

I will pay Principal and interest by making payments every month.

I will make my monthly payments on the **1st** day of each month beginning on **July 1, 2007**. I will make these payments every month until I have paid (i) all the Principal and interest; and (ii) any other charges described below that I may owe under this Note; and (iii) any charges that may be due under the Security Instrument. If, on **June 1, 2037**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612** or at a different place if required by notice from the Lender.

(B)   **Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. **$ 1,358.36**. This amount will change as described in Sections 3(C) and 3(D) below. My initial monthly payment amount was selected by me from a range of initial payment amounts approved by Lender and may not be sufficient to pay the entire amount of interest accruing on the unpaid Principal balance.

(C)   **Payment Change Dates**

My monthly payment will change as required by Section 3(D) below beginning on the **1st** day of **July, 2008** and on that day every **12th** month thereafter until the **121st** month, which will be the final payment change. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Section 3(F) or 3(G) below requires me to pay a different amount.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date and as provided in Section 3(F) or 3(G) below.

(D)   **Calculation of Payment Changes**

Subject to Sections 3(F) and 3(G), on the Payment Change Date my monthly payment may be changed to an amount sufficient to pay the unpaid principal balance together with interest, including any deferred interest as described in Section 3(E) below, by the Maturity Date. However, the amount by which my payment can be increased will not be more than 7-1/2% of the then existing Principal and interest payment. This 7-1/2% limitation is called the "Payment Cap." The Lender will perform this Payment Change calculation at least 60 but not more than 90 days before the Payment Change Date.

**THIS SPACE INTENTIONALLY LEFT BLANK**

REDACTION

(E)    **Deferred Interest; Additions to My Unpaid Principal**

From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due. If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.

(F)    **Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal balance can never exceed **125%** of the Principal I originally borrowed, called "Principal Balance Cap." If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my monthly payment is due, I will instead pay a new monthly payment. Notwithstanding Sections 3(C) and 3(D) above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date together with interest, in substantially equal payments.

(G)    **Final Payment Change**

On the **10th** Payment Change Date my monthly payment will be calculated as described in Section 3(D) above except that the Payment Cap limitation will not apply.

(H)    **Notice of Payment Changes**

The Lender will deliver or mail to me a notice of any changes in the amount of my monthly payment, called "Payment Change Notice," before each Payment Change Date.

4.    **FAILURE TO MAKE ADJUSTMENTS**

If for any reason Lender fails to make an adjustment to the payment amount as described in this Note, regardless of any notice requirement, I agree that Lender may, upon discovery of such failure, then make the adjustments as if they had been made on time. I also agree not to hold Lender responsible for any damages to me which may result from Lender's failure to make the adjustment and to let the Lender, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

5.    **BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal before it is due is called a "Prepayment". When I make a Prepayment, I will tell the Lender in writing that I am doing so.  The Lender may require that any partial Prepayments be made on the date my regularly scheduled payments are due. If I make a partial Prepayment, there will be no changes in the due dates or amount of my regularly scheduled payments unless the Lender agrees to those changes in writing.  I may pay deferred interest on this Note at any time without charge and such payment will not be considered a "Prepayment" of Principal.  During the first 3 years of the loan term if I make one or more Prepayments that, in the aggregate, exceed $5,000 in any calendar month, I must pay a prepayment charge equal to 2% of the amount such Prepayments exceed $5,000 in that calendar month. After the first 3 years of the loan term, I may make a full or partial Prepayment without paying any prepayment charge.

6.    **MAXIMUM LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7.    **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A)    **Late Charges for Overdue Payments**

If the Lender has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Lender. The amount of the charge will be **5.00%** of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

REDACTION

**(B)    Default**

I will be in default if (i) I do not pay the full amount of each monthly payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under this Note or the Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading.

**(C)    Notice of Default**

If I am in default, the Lender may send me a written notice, called "Notice of Default," telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the amount of Principal which has not been paid and all the interest that I owe on that amount, plus any other amounts due under the Security Instrument.

**(D)    No Waiver by Lender**

Even if, at a time when I am in default, the Lender does not require me to pay immediately in full as described above, the Lender will still have the right to do so if I am in default at a later time.

**(E)    Payment of Lender's Costs and Expenses**

The Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses may include, for example, reasonable attorneys' fees and court costs.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me or any Borrower at **6927 CYPRESS GROVE DR, RIVERSIDE, CA 92506-6216**, or at a single alternative address if I give the Lender notice of my alternative address. I may give notice to Lender of a change in my address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes.

Except as permitted above for changes of address, any notice that must be given to the Lender under this Note will be given by mailing it by first class mail to the Lender at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who takes over these obligations is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment, notice of dishonor, notice of acceleration, and protest. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

**11.    SECURED NOTE - ACCELERATION**

In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note gives the Lender security against which it may proceed if I do not keep the promises which I made in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note and includes the following Paragraph **26:**

**AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

REDACTION

**12.  GOVERNING LAW; SEVERABILITY**

  This Note shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law." In the event that any of the terms or provisions of this Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Note.

**13.  CLERICAL ERRORS**

  In the event the Lender at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error.

**14.  LOST, STOLEN OR MUTILATED DOCUMENTS**

  If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS**

REDACTION

### SIGNATURE PAGE

NOTICE TO BORROWER(S):

BY SIGNING THIS NOTE YOU AGREE TO PAY A PREPAYMENT CHARGE IN CERTAIN CIRCUMSTANCES. PLEASE CAREFULLY READ THIS ENTIRE NOTE (INCLUDING THE PREPAYMENT PROVISION) BEFORE YOU SIGN IT.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____    (Seal)
JOSE LUIS BOBADILLA

_____    (Seal)
JOSE LUIS BOBADILLA JR

SD253 (2004-03-1)    [W14 (2004-03-01)]    Page 6 of 6

# EXHIBIT "5"

Date of this Agreement:       July 15, 2009
Note known as Loan Number:  REDACTION
Property Address:             6927   CYPRESS GROVE DR
                             RIVERSIDE, CA 92506
Existing Principal Balance:   $ 391,834.18
Return Date for this Agreement: July 25, 2009

## MODIFICATION AGREEMENT

This Modification Agreement ("Agreement") is made as of the date above between the undersigned ("Borrower"), as obligor(s) on the Loan described above or as title holder(s) to the Property, as the context may require, and Wachovia Mortgage, FSB ("Lender"). Borrower agrees that, except as expressly modified in this Agreement, the Note and the Security Instrument remain in full force and effect and are valid, binding obligations upon Borrower, except as discharged in Bankruptcy, and are properly secured by the Property.

Unless this Agreement is executed without alteration and returned by the Return Date above this Agreement will be of no force or effect and the Loan will remain subject to all existing terms and conditions provided in the Note and Security Instrument. This Agreement will only be deemed received when __actually__ received by Lender at: Wachovia Mortgage, Loan Modifications, TX1351, PO Box 659558, San Antonio, Texas, 78265-9558.

1. If outstanding and owed as of the Date of this Agreement, Lender agrees to:
a. Waive all outstanding Late Charge and Return Check Fees on the Loan; and
b. Add amounts owed for "Escrow Amounts Advanced," "Foreclosure Fees," "Attorney's Fees," and "Property Inspection Fees" to the Loan balance.

2. Lender and Borrower further agree to modify the Loan as follows:
a. Forgive accrued, outstanding, and not capitalized interest through      July 31, 2009
b. The balance owed on the Loan will be                                     $ 360,487.45
c. The maturity date of the Loan is                                         August 1, 2049
d. The __Interest Only__ payment(s) on the Loan will be as follows:

| Payment Due Date | Payment (Interest Only) | Interest Rate | Interest Rate Eff. Date |
|---|---|---|---|
| 09/01/2009 | $ 1,532.08 | 5.100% | 08/01/2009 |
| 09/01/2010 | $ 1,569.63 | 5.225% | 08/01/2010 |
| 09/01/2011 | $ 1,607.18 | 5.350% | 08/01/2011 |
| 09/01/2012 | $ 1,644.73 | 5.475% | 08/01/2012 |
| 09/01/2013 | $ 1,682.28 | 5.600% | 08/01/2013 |
| 09/01/2014 | $ 1,719.83 | 5.725% | 08/01/2014 |

e. __Principal and Interest__ Payment for the remaining term of the Loan:

| | | | |
|---|---|---|---|
| 09/01/2015 | $ 2,194.86 | 6.500% | 08/01/2015 |

1 of 2

Mail Workflow

JUL 2 8 2009

REDACTION

Monthly payments will be due on the same day of each month. Each Interest Rate will go into effect on the corresponding Interest Rate Effective Date. **The payments above DO NOT include amounts necessary for escrow.** Each Payment under 2(d) is an interest only payment calculated at the interest rate specified. The payment under 2(e) is the principal and interest payment for the remainder of the term calculated at the interest rate specified.

3. The Interest Change Dates, Calculation of Interest Rate Changes, Payment Change Dates, Calculation of Payment Changes, Index and Payment Cap Limitation no longer apply.

4. The Loan may not be assumed by any other person or entity.

5. If a biweekly loan, the Loan will convert to a monthly payment schedule. References to "biweekly," "every two weeks," and "every other Monday" shall be read as "monthly," except as it relates to the Modified Maturity Date. Interest will be charged on a 360-day year, divided into twelve (12) segments. Interest charged at all other times will be computed by multiplying the unpaid principal by the interest rate, dividing the result by 365, and then multiplying that daily interest amount by the actual number of days for which interest is then due.

As part of the conversion from biweekly to monthly payments, any automatic withdrawal of payments (auto drafting) in effect with Lender for the Loan are cancelled.

6. Lender acknowledges that one or more of the undersigned may have filed for bankruptcy or may have received a discharge in a bankruptcy proceeding. Said individual(s) acknowledge and agree that this Agreement is not a reaffirmation agreement as defined in 11 U.S.C. §524, that any references in this Agreement that imply liability under the Note obligation instead refer to the amounts secured by the property and is not meant to impart personal liability on such individual(s), and that this Agreement and communications related to this Agreement are not attempts to collect, assess or recover a claim against the individual(s) that arose before the commencement of the bankruptcy or that has been discharged.

Borrower agrees that (a) Borrower has read this Agreement in its entirety; (b) Borrower has consulted, or had opportunity to consult, with an attorney of Borrower's choosing; and (c) Borrower has voluntarily entered into this Agreement.

BORROWER(S):                                   Wachovia Mortgage, FSB

**JOSE LUIS BOBADILLA**                        Mary C. Reeder
                                               **Senior Vice President**

**JOSE LEWIS BOBADILLA JR**

2 of 2

# EXHIBIT "6"

1  Kristin A. Zilberstein, Esq. (200041)
   Jennifer R. Bergh, Esq. (305219)
2  Adam P. Thursby, Esq (318465)
   THE LAW OFFICES OF MICHELLE GHIDOTTI
3  1920 Old Tustin Ave
   Santa Ana, CA  92705
4  Telephone: (949) 427-2010
   Facsimile No.:  (949) 427-2732
5  Email: kzilberstein@ghidottilaw.com

6  Attorneys for Creditor
   Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust
7  As Owner Trustee for the Residential Credit Opportunities Trust V,
   its successor and/or assignees

8

9

10                 UNITED STATES BANKRUPTCY COURT

11      CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

12  In re:                            )  Case No.  18-14774
                                      )
13  Jose Luis B. Guerrero             )
                                      )  Chapter 7
14             Debtor.                )
                                      )  **DECLARATION OF BROKER, MARIA**
15                                    )  **MUNTEAN IN SUPPORT OF MOTION**
                                      )  **FOR RELIEF**
16                                    )
                                      )  Honorable Mark D Houle
17                                    )
                                      )  DATE: 08/21/2018
18                                    )  TIME:  10:00am
                                      )  CTRM: 303
19                                    )  PLACE: US Bankruptcy Court
                                      )           3420 Twelfth Street
20                                    )           Riverside CA 92501
                                      )
21                                    )
                                      )
22                                    )
   _____)
23

24

1

1   I, Maria Muntean, declare as follows:

2      1. I have personal knowledge of the following matters and, if called upon as a witness, I

3 could and would testify as to the matters set forth herein.

4      2. I am licensed real estate broker.

     3. My broker license ID is _01357167_ .

5      4. I have been a licensed broker in the State of California since _2002_ .

6      5. I have taken numerous real estate appraisal classes and attended real estate seminars.

7      6. I have prepared over _500_ broker price opinions.

8      7. I am familiar with the market values in and around Riverside County, California,

9 and, particularly, with the City of Riverside. A summary of my qualifications and my resume

10 are attached hereto as Exhibit "1" and incorporated herein by reference.

11      8. I was asked to render an opinion of value for the real property located at 6927

Cypress Grove Drive, Riverside, CA 92506(the "Property").

12      9. I completed an opinion of value (the "Report") setting forth the Property's value

13 as of February 1, 2018. A true and correct copy of the Report is attached hereto as Exhibit "2".

14      10. In preparing the Report, I collected, verified and interpreted various data

15 necessary to render an opinion of value. The data upon which I relied are of the type and

16 quantity relied upon by other appraisers when rendering an opinion of value of residential real

property.

17      11. To render my opinion, I observed the exterior of the home that is the subject of

18 the Report.

19      12. I also considered comparable sales in the area.

20      13. The comparable sales that I utilized in establishing the market value of the

Property are all located within .5 miles of the Property.

21      14. I observed that the Property is in good condition and is well maintained.

22      15. The Property has good curb appeal, and there are no visual repairs needed.

23      16. Based on my observations of the Property, knowledge of the area, and valuation

24 determination process as more particularly set forth in the Report, it is my professional opinion

1 | that the value of the Property at the time of the Report was Five hundred twenty five thousand

2 | dollars ($525,000.00). .

3

4 |     I declare under penalty of perjury of laws of the United States of America that the

foregoing is true and correct and that this declaration was executed this _____*10*_____ day of July,

5 | 2018 at _LAKE ELSINORE_, California.

6

7

8 | Maria Muntean

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**RedBell Real Estate**

### ORDER INFORMATION

| Order Date: 02/01/2018 | Inspection Date: 02/01/2018 | Complete Date: 02/04/2018 | Customer: American Mortgage IP | Customer Contact: Tauane Horton | Customer Contact Info Source: County Records | Customer Loan No. REDAC | Order No. REDAC |
|---|---|---|---|---|---|---|---|
| Pool Name: NB 2018_0110 | Borrower: | Address: 6927 CYPRESS GROVE DR | | City: RIVERSIDE | State: CA | Zip: 92506 | Assessor Parcel No. 272-072-018 |
| Inspection Type: Exterior | Broker Name: Maria Muntean | Years Of Exp: 15 | Broker Company: Maria Muntean Broker | | Broker Phone: 9514791688 | License Number: 01357167 | Expiration Date: 11/18/2018 |

### PROPERTY INFORMATION

| Property Vacant: No | Secured: Yes | Land Value: 133000.00 | View: Neighborhood | Market Rent (Mnth): $2,200 | HOA Fees: $0 Period: unassigned | Guest House SF: 0 | Guest House Bsmt SF: 0 |
|---|---|---|---|---|---|---|---|
| Currently Listed: Yes | List in Last 12 Mo.: Yes | Original List Price: $509,900 | Current List Price: $509,900 | DOM: 12 | Listing Broker: 14 | Listing Company: Oscar Gomez broker | Listing Phone: 9512403579 |
| Sold in Last 12 Mo.: No | Original List Price: $0 | Final List Price: $0 | DOM: 0 | Sale Price: $0 | Sale Date: | Listing Broker: | Listing Broker: |

### NEIGHBORHOOD INFORMATION

| Population Density: Urban | Crime/Vandal Risk: Moderate | Neighborhood Trend: Improving | Home values are Increasing at a rate of:1.000 | Environmental Issues: Unknown | Owner Occupied %: 98.00% | Pride of Ownership: Good |
|---|---|---|---|---|---|---|
| Competing Listings: 5 | Value Range: $499,000to:$560,000 | Supply: Decreasing | Demand: Stable | Predominant Buyer: Owner Occupied | # of Border or Blocked up homes: 0 | Approximate # of comps in neighborhood for sale: 0 |

### REPAIR DETAILS

| Repairs Total: $0 | Repairs Recommended: No | | Days to Complete: 0to:0 | Resale Problem: No | | | |
|---|---|---|---|---|---|---|---|

EXTERIOR

| REPAIR TYPE | REPAIR COMMENTS | AMOUNT |
|---|---|---|
| Painting | | $0 |
| Foundation | | $0 |
| Landscaping | | $0 |
| Roof | | $0 |
| Windows | | $0 |
| Other | | $0 |
| Pool | | $0 |
| Cleaning/Trash Removal | | $0 |
| Repair Bid | | $0 |

### COMPARABLE INFORMATION

| Property Info | Subject | Sold Comp 1 | Sold Comp 2 | Sold Comp 3 | Listed Comp 1 | Listed Comp 2 | Listed Comp 3 |
|---|---|---|---|---|---|---|---|
| Address: | 6927 CYPRESS GROVE DR | 934 Mission Grove PW N | 246 Gracefield WY | 254 Gracefield WY | 380 Elmridge CT | 107 Acacia Glen DR | 6880 Ironwood DR |
| Address2: | | | | | | | |
| City: | RIVERSIDE | Riverside | Riverside | Riverside | Riverside | Riverside | Riverside |
| County: | Riverside | Riverside | Riverside | Riverside | Riverside | Riverside | Riverside |
| State: | CA | CA | CA | CA | CA | CA | CA |
| Zip: | 92506 | 92506 | 92506 | 92506 | 92506 | 92506 | 92506 |
| Proximity: | | 0.36 | 0.13 | 0.14 | 0.50 | 0.14 | 0.48 |
| Current List Price: | $509,900 | $510,000 | $506,000 | $525,000 | $499,900 | $515,000 | $550,000 |
| Original List Price: | $509,900 | $510,000 | $549,000 | $549,000 | $529,000 | $515,000 | $550,000 |
| Sale Price: | $0 | $500,000 | $506,000 | $525,000 | | | |
| Sale Date: | | 12/08/2017 | 08/07/2017 | 01/23/2018 | | | |
| Sale Type: | Short Sale | FMV | FMV | FMV | FMV | FMV | FMV |
| Concessions: | $0 | $0 | $0 | $0 | | | |
| DOM: | 0 | 87 | 66 | 119 | 113 | 52 | 57 |
| CumulativeDOM: | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| NumUnits: | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Property Type: | SFD | SFD | SFD | SFD | SFD | SFD | SFD |
| Property Style: | Traditional | Traditional | Traditional | Traditional | Traditional | Traditional | Traditional |
| Construction: | Stucco | Stucco | Stucco | Stucco | Stucco | Stucco | Stucco |
| Condition: | Good | Good | Good | Good | Good | Good | Good |
| Year Built: | 1990 | 1989 | 1988 | 1988 | 1992 | 1989 | 1991 |
| View: | Neighborhood | Neighborhood | Neighborhood | Neighborhood | Neighborhood | Neighborhood | Neighborhood |
| Lot Size (in acres): | 0.28 | 0.49 | 0.28 | 0.28 | 0.32 | 0.27 | 0.32 |
| Sq ft above grade: | 2293 | 2323 | 2272 | 2038 | 2116 | 2116 | 2240 |
| Total Rooms: | 8 | 7 | 7 | 7 | 7 | 7 | 7 |
| Bedrooms: | 5 | 4 | 4 | 4 | 4 | 4 | 4 |
| Full Baths: | 3 | 3 | 3 | 3 | 3 | 3 | 3 |
| Half Baths: | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Basement: | None | None | None | None | None | None | None |
| % Basement Finished: | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Garage/Carport: | Attached 3 Car Garage | Attached 3 Car Garage | Attached 3 Car Garage | Attached 3 Car Garage | Attached 3 Car Garage | Attached 3 Car Garage | Attached 3 Car Garage |
| Pool/Spa/Fireplace: | No/ No/ Indoor | No/ No/ Indoor | Yes/ No/ Indoor | Yes/ No/ Indoor | No/ No/ Indoor | No/ No/ Indoor | Yes/ No/ Indoor |
| Price per sq. ft.: | $0 | $215 | $223 | $258 | $236 | $243 | $246 |

**Sold Comp 1 Comments:**
This gorgeous home has 4 bedrooms plus 1 den and 3 bathrooms. Located in one of the most desirable Mission Grove neighborhood in Riverside. Upgrades through out the house including kitchen with granite counters, recessed lighting, aluminum floor and carpeted second floor. Master bedroom has a balcony with partial mountain views. You can feel the nice breeze and clean view all the time since there's no houses, buildings blocking front of the house. House is located right front of "Taft Elementary School". Open floor plan makes great place to entertain family and friends.

**Sold Comp 2 Comments:**
This is that turnkey Mission Grove home that you have been waiting for! Lovingly maintained, and recently updated with fresh interior and exterior paint, new flooring throughout, as well as a remodeled kitchen that includes granite counters. Located on a spacious .28 acre lot with space and privacy between neighbors. The landscaping is drought tolerant, and there is ample room to add a pool. The 4 bedroom, 3 bath floor-plan (one bedroom and bath down) includes formal living and dining rooms and a spacious family room that is open to the kitchen. The home shows light, bright and the decor is neutral. There is plenty of room for parking between the 3 car garage and concrete side yard. Located close to parks, top performing schools and shopping. Truly one of Riverside

**Sold Comp 3 Comments:**
Comp is similar to subject, similar GLA, lot, age and style, same location and condition.

**Listed Comp 1 Comments:**
Beautiful move in condition Mission Grove two story well maintained home at the end of Cul-De- Sac. 3 car garage plus huge RV and boat parking. Completely redone in 2016. First floor Italian marble and granite counter tops with recently remodeled bath rooms.One bed and bath downstairs. Extra closet added in upstairs master. Corner Jacuzzi hot tub in master bedroom. High ceilings through out. Second level flooring is combination of natural wood and laminated flooring.Walk in closet in master. Fantastic huge, private, well landscaped back yard with built in BBQ island, outdoor fire place and patio. City view.Flat screen TVs and sound system are included in the sale. Looking for fast closing.

**Listed Comp 2 Comments:**
PRICE REDUCTION!!!!!Beautiful 4 bedroom 3 bath, two story home in the highly desired neighborhood of Mission Grove. Spacious floor plan with 2116 Sq. Ft and a bedroom and bath downstairs. Open concept kitchen and family room, with formal dining room and living room space. Landscaped yard with drought resistant plants, citrus fruit trees and a 11,761 sq ft lot with plenty of room to park your motorhome or toys. Nice covered patio and storage shed. A huge 3 car garage with epoxy flooring, insulation, workbench and storage cabinets. Kitchen has granite counters, stainless steel appliances, with plenty of cabinet space. Tile and wood veneer and bamboo flooring throughout. Master bath has been fully remodeled with a deep soaking tub and new vanity, sinks, faucets, paint and tile. This home has been loved and sellers have pride of ownership. New roof, mister system on patio, WIFI ready garage door opener and irrigation system. Water filter, newer AC and heating unit in the last 2 years plus a new roof.......Did I mention on a cul de sac, walking distance to elementary school and close to UCR, 60,215 and 91 freeway. Near the Canyon Crest Towne Center with great restaurants and shopping. Excellent school system, MLK with a rating of 8+. Don't miss this beauty, call and arrange a showing today!!

**Listed Comp 3 Comments:**
This stunning Mission Grove beauty in Riverside boasts pride of ownership throughout and is located in one of Riverside's best and most desired locations. Home has been lovingly maintained and recently updated with granite counter tops and new carpet in living room. Family room has a fireplace and flows into both the breakfast/theater room and kitchen. This home has a large bedrooms and 3 full bathrooms and lovely wood floors upstairs. The 4th bedroom downstairs was converted to a theater room with a built-in entertainment center that can be easily converted back to a bedroom or office. Master bedroom is spacious with lovely views of the mountains. The garage boasts an attic with a pull down ladder and abundant storage space. Home is situated on a beautifully landscaped 13,939 sq. ft.lot with a brick walkway, a massive driveway, ample room for RV with plenty of room for your boat and toys, and a fenced in dog run. Inviting resort-like backyard was built for entertaining with lush mature landscaping, pool, spa and built in BBQ great for enjoying family time in this outdoor

| BROKER COMMENTS |
|---|

**Subject Comments:**
Subject is conforming to the neighborhood with good curb appeal.

**Neighborhood Comments:**
Market is still improving in the area, inventory is low with decreasing number of short sale and REO

**Condition/Repair:**
Subject appear in good condition with no exterior repairs needed.

| PRICE OPINION | | | | | | |
|---|---|---|---|---|---|---|
| Typical Market Time:<br>61-120 | Quick Sale Price:<br>$505,000 | As Is Sale Price<br>$515,000 | As Is List Price<br>$525,000 | Repair Estimate<br>$0 | Quick Sale Repaired Price<br>$505,000 | Repaired Sale Price<br>$515,000 | Repaired List Price<br>$525,000 |

| Pricing Strategy |
|---|

Comp sale # 3 is similar to subject, similar GLA, lot and age, similar location and condition. Pool $ - 10000, total value $ 515000

| QC Review |
|---|

Based on the current market area, the current subject price given is accurate based on the current market area. The comparables provided in this BPO share similar characteristics to the subject and are considered to be good indicators of value.

| Broker's Signature |
|---|

02/01/2018

Agent Signature

| Maria Muntean | | | Date | |
|---|---|---|---|---|
| Broker Address | 14 Del Santello, Lake Elsinore, CA 92532 | Broker Fax | | Broker Email | |

DISCLOSURE: This is a comparative market analysis, not a appraisal, and should not be used for lending purposes. Therefore, it is not intended to be an appraisal for the market value of the property and such does not comply with USPAP standards. If an appraisal is desired, the services of a licensed or certified appraiser should be obtained.

This opinion is not an appraisal of the market value of the property, and may not be used in lieu of an appraisal. If an appraisal is desired, the services of a licensed or certified appraiser shall be obtained. This opinion may not be used by any party as the primary basis to determine the value of a parcel of or interest in real property for a mortgage loan origination, including the first and second mortgages, refinances, or equity lines of credit.

By completing this report, the Broker certifies that they have completed a site inspection of the subject property and that subject photos were taken at the time of inspection.

Agent Comments

Sale1 Lot size variance is + or - 20% of the subject lot size. Please explain.

lack of comps with similar lot size

REDACTI

Inspection Date:       Address: REDACTE CYPRESS 21xx DR          REDACTE          Order Number:



Subject Front



Subject Front Side 1



Subject Front Side 2



Subject Street Scene 1



Subject Street Scene 2



Subject Address verification

Description: During inspection I forgot to take the house number





Sold Comp 1

Sold Comp 2





Sold Comp 3

Listing Comp 1





Listing Comp 2

Listing Comp 3





| | **Subject** | 0.00 Miles | 6927 CYPRESS GROVE DR,RIVERSIDE,CA92506 |
|---|---|---|---|
| | **Listing 1** | 0.50 Miles | 380 Elmridge CT , Riverside, CA 92506 |
| | **Listing 2** | 0.14 Miles | 107 Acacia Glen DR , Riverside, CA 92506 |
| | **Listing 3** | 0.48 Miles | 6880 Ironwood DR , Riverside, CA 92506 |
| | **Sale 1** | 0.36 Miles | 934 Mission Grove PW N , Riverside, CA 92506 |
| | **Sale 2** | 0.13 Miles | 246 Gracefield WY , Riverside, CA 92506 |
| | **Sale 3** | 0.14 Miles | 254 Gracefield WY , Riverside, CA 92506 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

1920 Old Tustin Ave
Santa Ana, CA 92705

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _07/18/2018_, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Debtors Counsel:Gary S Saunders  rebecca@saunderslawoffice.com, gary@saunderslawoffice.com;
mari@saunderslawoffice.com;wfh_opportunity@sonic.net
Trustee: John P Pringle (TR) brenfro@rpmlaw.com, jpp@trustesolutions.net
US Trustee:  ustpregion16.rs.ecf@usdoj.gov

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _07/18/2018_, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Debtor: Jose Luis B. Guerrero 1242 North 9th Street Colton, CA 92324 (US Mail)
Judge: Honorable Mark D Houle 3420 Twelfth Street, Suite 365, Riverside CA 92501 (US Mail)
Borrower: Jose Lewis Bobadilla Jr. 6927 Cypress Grove Drive, Riverside CA 92506 (US Mail)
Jr Lein Holder: Fay Financial c/o Fay Servicing LLC 440 S LaSalle St., ste 2000 Chicago IL 60605 (US Mail)
JR: Fay Financial Servicing LLC c/o Wells Fargo Home Mortgage 8480 Stagecoach Cir, Frederick MD 21701 (US Mail)

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| _07/18/2018_ | Krystle Miller | /s/ Krystle Miller |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## CONTINUED PROOF OF SERVICE OF DOCUMENT

JR LIEN HOLDER: Fay Financial Servicing LLC c/o Wells Fargo Home Mortgage MAC X780-014 3476 Stateview Blvd Fort Mill, SC 29715 (US MAIL)

JR LIEN HOLDER: Fay Financial Servicing LLC 939 W North Ave Chicago, IL 60642 (US MAIL)

JR LIEN HOLDER: Wells Fargo Home Mortgage c/o First American Title Ins PO Box 4573 El Dorado Hills, CA 95762 (US MAIL)

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**